UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRI HARRIS for ERIC LAMONT HARRIS,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:15-cv-01067 AC<br><br><br>ORDER |

Plaintiff Sherri Harris ("plaintiff" or "Ms. Harris"), seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), which denied the application of her late husband Eric Lamont Harris ("claimant" or "Mr. Harris"), for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[1]  Ms. Harris, having been substituted in as the plaintiff in this action upon

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).  SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

1

the death of her husband, seeks a remand under "sentence six" of the Act, 42 U.S.C. § 405(g).[2]

For the reasons that follow, the court will deny plaintiff's motion for remand, and grant the Commissioner's cross-motion for summary judgment.

## I.  PROCEDURAL BACKGROUND

Claimant applied for disability insurance benefits and for supplemental security income in August, 2011. Administrative Record ("AR") 10 (ALJ decision).[3] In both applications, claimant alleged disability arising from "back, mental, depression," with an onset date of May 31, 2011. See AR 78, 89. The applications were disapproved initially and on reconsideration, AR 10. On May 21, 2013, ALJ Jean R. Kerins presided over the hearing on claimant's challenge to the disapprovals. AR 34-77 (transcript). Claimant was present and testified at the hearing, as did Sherri Harris, his wife. Id. Claimant was either not represented at the hearing or he was represented by his non-attorney wife, although he was advised of his right to have a lawyer representative there.[4] Id. Jim Van Eck, Vocational Expert, also testified at the hearing. Id.

On June 28, 2013, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 10-23 (decision), 24-27 (exhibit list). On August 15, 2013, Mr. Harris requested a review of the ALJ's decision by the Appeals Council. AR 28-33. He sought review on the grounds that he had "bad eyes / bad back / bad headaches / bad kidneys / excessive numbness in arms + legs / use a (C-PAP) machine at nite / high blood pressure / currently speaking with head Dr. etc…." AR 28, 30. He also asserted that he was "dealing with depression issues and suicide issues." AR 33.

---

[2] The court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).
[3] The AR is electronically filed at ECF Nos. 10-3 to 10-11 (AR 1 to AR 632).
[4] There was some confusion at the hearing about whether Mr. Harris was "represented." Mr. Harris stated that he was represented by his wife, Sherri Harris. In fact, Ms. Harris *was* appointed his representative on April 3, 2013. AR 158. The ALJ concluded that Ms. Harris was not really a representative in the sense that an attorney would be, that she was instead a witness, and he provided Mr. Harris with a form waiving representation, which Mr. Harris signed. AR 37-43, 161.

On June 13, 2014, while the matter was before the Appeals Council, Mr. Harris died. AR 626 (Death Certificate). An autopsy report, dated August 6, 2014, concluded that plaintiff died from "Emphysema (Years)." AR 632. In or around December 2014, Ms. Harris was substituted in as plaintiff in this action. See ECF No. 19 at 5. At some point, Ms. Harris wrote an undated letter asserting that she was a widow because of the care Mr. Harris received at the "Veterans Hospital at Mather Field in Sacramento, Ca." AR 269-70. She complains that the hospital failed to properly examine her husband even after he reported a cough, shortness of breath and chest pains. AR 269.

On March 17, 2015, after receiving into evidence plaintiff's letter, the death certificate, the autopsy report, and the substitution of party, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-5 (decision and additional exhibits list). Plaintiff filed this action on May 15, 2015. ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3).

On February 22, 2016, plaintiff filed a motion for a remand under "sentence six" of the Act, in light of the evidence she attached to the motion. ECF No. 18. Plaintiff attached to the motion the death certificate and autopsy report, both of which were previously considered by the Appeals Council, and a September 30, 2015 letter from the Veteran's Administration's Northern California Health Care System. The Commissioner filed a cross-motion for summary judgment. ECF No. 19.[5]

## II. FACTUAL BACKGROUND

Mr. Harris was born on May 14, 1963, and accordingly was 48 years old on the alleged disability onset date, making plaintiff a "younger person" under the regulations. AR 21; see 20 C.F.R §§ 404.1563(c), 416.963(c) (same). Mr. Harris had a high school education, and could communicate in English. AR 21.

////

////

---

[5] The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 7, 22.

III.  LEGAL STANDARDS

A.  Reviewing the Commissioner's Decision

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.

////

2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. SSA, 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

B. "Sentence Six" Remand

To justify a remand under sentence six of 42 U.S.C. § 405(g) for consideration of new evidence, plaintiff must show that the new evidence is "material" to determining plaintiff's disability, and that there is "good cause for having failed to produce that evidence earlier." Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001).

> To be material under section 405(g), the new evidence must bear "directly and substantially on the matter in dispute." Ward v. Schweiker, 686 F.2d 762, 764 (9th Cir. 1982). Mayes must additionally demonstrate that there is a "reasonable possibility" that the new evidence would have changed the outcome of the administrative hearing.

Mayes, 276 F.3d at 462.

IV.  RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 423(a)(1)(E) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

5

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy."  Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2015.
>
> 2. [Step 1] The claimant has not engaged in substantial gainful activity since May 31, 2011, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).
>
> 3. [Step 2] The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, depression, and

alcohol dependence disorder (20 CFR 404.1520(c) and 416.920(c)).

4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. [Residual Functional Capacity ("RFC")] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). The claimant can lift and/or carry fifty pounds occasionally and twenty-five pounds frequently. He can frequently climb ramps and stairs. He cannot climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, crouch, or crawl. He must avoid extreme cold, heat, wetness, and workplace hazards. The claimant can perform simple, repetitive, and complex tasks.

6. [Step 4] The claimant is capable of performing past relevant work as a caregiver. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

The claimant was born on May 14, 1963 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963). The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964). Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

[Step 5] In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 31, 2011, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

AR 21-29.

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 23.

////

VI.  ANALYSIS

A.  Remand

Plaintiff requests a "sentence six" remand so that the ALJ can consider evidence of Mr. Harris's emphysema.  ECF No. 18.  It is difficult to understand what error plaintiff believes occurred here, as her brief consists mostly of non-committal statements that only hint that some error might have occurred.[6]  Nevertheless, plaintiff seems to be arguing that the ALJ's Step Two determination – that Mr. Harris's obstructive sleep apnea was not severe – was erroneous, in light of subsequent evidence showing that that Mr. Harris died of emphysema "only one year" after the ALJ's determination.  See ECF No. 18 at 6 (setting out plaintiff's "three points" supporting remand).  More broadly, plaintiff seems to be arguing that since Mr. Harris had emphysema, he was disabled under the Act.

Both arguments fail.  As discussed more fully below, it is not enough to show that Mr. Harris had emphysema during the relevant period, it is not enough to show that his emphysema was misdiagnosed as obstructive sleep apnea ("OSA"), and it is not even enough to show that Mr. Harris died of emphysema.  Congress in its wisdom has not seen fit to permit the Commissioner, or this court, to award DIB or SSI to a claimant simply because he is impaired, or not even because he is impaired with a disease that will cause his death.  Rather, a claimant must show that he is so *severely* impaired – during the period under adjudication – that he cannot work at the level of "substantial gainful activity."[7]

////

---

[6] For example, "the decision's step-two determination *may have been in error*," "the autopsy report *might be read* as impeaching the decision's step-two findings, requiring reversal," "the fact of this emphysema *strongly calls into question* the decision's designation of sleep apnea as nonsevere," and certain signs and symptoms "*may bear on step two* and the ultimate finding of nondisability."  ECF No. 18 at 5, 6 (emphases added).

[7] In addition, the impairment must last or be expected to last for 12 months, or be expected to result in the claimant's death.  42 U.S.C. § 423(d)(1)(A).  Plaintiff's complaint alleges that Mr. Harris's death from his emphysema shows that the durational requirement of the statute was satisfied.  See ECF No. 1 at 2 ¶ VI.  Assuming this to be correct, this fact does not mean that the functional limitation requirements are satisfied.  The question here is whether the claimant had functional limitations during the period he was apparently living with emphysema.

1. Good cause

The new evidence upon which plaintiff seeks remand are the death certificate, the autopsy report, and the VA letter, all of which are attached to her motion. See ECF No. 18-1. The Commissioner concedes that these materials could not have been produced earlier than they were, and the concession is well taken. See ECF No. 19 at 12.[8] The VA letter is dated September 30, 2015, months after the Appeals Council denied the request for review of the ALJ's decision. ECF No. 18-1 at 8. Although the death certificate and the autopsy report pre-date the Appeals Council decision, they were both submitted to the Appeals Council while the matter was pending there. The Appeals Council received both documents as exhibits, making them part of the record. AR 6. However, the Appeals Council does not expressly indicate whether or not it considered those exhibits in declining to review the ALJ's decision.[9] See AR 1-4. Accordingly, the court considers all three additional documents in this analysis. See Mayes, 276 F.3d at 458 (applying "new evidence" remand analysis to documents the Appeals Council received, but determined were "not relevant" to the ALJ's disability determination).

2. Materiality

According to plaintiff, the new evidence "implies that the decision's step-two determination" – that plaintiff's sleep apnea was not severe – "may have been in error." ECF No. 18 at 5. The information provided in the new evidence is that Mr. Harris died of emphysema,

////

---

[8] The Commissioner concedes that "the *autopsy report* and the *VA letter* could not have been produced earlier." ECF No. 19 at 12 (emphasis added). The Commissioner's omission of the *death certificate* from this concession appears to be an oversight, and in any event, it is not a material omission, since the relevant information in the death certificate – that plaintiff died of emphysema – is also contained in the autopsy report.

[9] The Appeals Council is required to consider new evidence submitted after the ALJ's decision, if it is "material" to the issues that were before the ALJ, and if the new evidence "relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. §§ 404.970(b), 416.1470(b); see also Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1159–60 (9th Cir. 2012) ("when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence").

and it apparently indicates that he had this disease for "years."  See ECF No. 18-1 at 6 (autopsy report).

This new evidence has no bearing on the ALJ's Step Two determination regarding sleep apnea, even if, as plaintiff apparently argues, sleep apnea is somehow the equivalent of emphysema.  The ALJ's decision was not based upon his belief that plaintiff did not have emphysema (or any other pulmonary disease).  Rather, it was based upon his finding that the sleep apnea, considered singly or in combination with other impairments, did not "significantly limit claimant's ability to perform basic work activities."  AR 13-14.  The issue before the ALJ was never simply whether Mr. Harris had a particular impairment, but rather, whether he had an impairment so severe that it rendered him unable "to engage in any substantial gainful activity."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  Congress did not choose to provide DIB or SSI to persons solely on the basis that they have certain diseases or impairments.  Rather, Congress chose to provide those benefits to persons whose diseases or impairments render them unable to engage in substantial gainful activities.  42 U.S.C. § 423(d)(1)(A).[10]

According to plaintiff, the new evidence shows that Mr. Harris was living with emphysema during the relevant period, and that the disease ultimately caused his death.  However, assuming that this is correct, the new evidence still does not show that Mr. Harris suffered any functional limitations from the onset date until the date of the ALJ's decision, or that his emphysema rendered him unable to work during that period.

The only new evidence that even bears upon the issue of functional limitations is the VA letter.  It is not at all clear that this letter is the type of "evidence" that the Commissioner would consider in making a disability determination.[11]  Indeed, plaintiff herself describes it as a "clearly self-interested" attempt to absolve the VA of any responsibility for Mr. Harris's death.  However,

---

[10] This Congressional choice may seem misguided when applied to this case, in which plaintiff asserts that her late husband was misdiagnosed, and ultimately died from a disease that his VA doctors missed and failed to treat.  However, this court is bound to follow the law as written, even where, as here, it leads to a sad result for this grieving widow.

[11] See 20 C.F.R. §§ 404.1512 ("Evidence"), 404.1513 ("Medical and other evidence of your impairment(s)"), 416.912 ("Evidence"), 416.913 ("Medical and other evidence of your impairment(s)").

even if this letter came from a legitimate medical source, it only serves to undermine any argument plaintiff could make about Mr. Harris's functional limitations. The VA letter states that Mr. Harris:

> was noted to have a chronic cough, subjective shortness of breath, and fatigue *but he was not physically limited, having stated he could run, walk, and ride a bicycle without significant limitation*.

ECF No. 18-1 at 8 (emphasis added). In addition, Mr. Harris "was unfortunately non-adherent with use of his CPAP *which would explain all of the noted pulmonary symptoms*." Id. (emphasis added). It goes on to question whether Mr. Harris even died of emphysema:

> The 'hyperinflation' of the lungs found on autopsy could be better explained by noncompliance with treatment of his sleep apnea rather than emphysema. The death appears due to overdose of multiple sedating drugs in the setting of severe untreated sleep apnea and alcohol use.

Id.[12] The VA's reference to claimant's sleep apnea as "severe" does not help plaintiff. The VA plainly did not mean that the disease was "severe" as that word is used in the Act and its implementing regulations, because the same letter states, as quoted above, that plaintiff "was not physically limited, having stated he could run, walk, and ride a bicycle without significant limitation."

### B. Substantial Evidence

The Commissioner moves for summary judgment affirming the ALJ's decision, arguing that the ALJ's decision is supported by substantial evidence and is not based upon legal error. The ALJ found, at Step Two, that plaintiff's sleep apnea alone, and in combination with other impairments, was not "severe." AR 12. This conclusion is supported by the opinion of the state agency reviewing doctors, Marilyn Orenstein, M.D. and S. Garcia, M.D., who reviewed evidence that Mr. Harris was diagnosed with obstructive sleep apnea ("OSA"), but that he "refuses to wear CPAP." AR 81, 92. Drs. Orenstein and Garcia specifically opined that Mr. Harris "also has OSA

---

[12] Plaintiff incongruously argues that the court should ignore this evidence, even though she has submitted it for the court's consideration. See ECF No. 18 at 4 (explaining why the court should consider the VA letter), 5 (explaining why the court should not consider the VA letter, as it is "clearly self-interested"). If the court ignores this evidence, it cannot provide any grounds for remand.

1  … *not severe*." AR 86 (emphasis added), 97, 110, 121.  These opinions are supported by
2  plaintiff's medical records from the Veteran's Administration, which show that he was diagnosed
3  with sleep apnea, but refused to wear the CPAP.[13]  There is no evidence that Mr. Harris ever used
4  the CPAP, or that it failed to fully resolve his sleep apnea.  Moreover, plaintiff identifies no
5  opinion or medical evidence that plaintiff's sleep apnea presented, or led to, any functional
6  limitation.[14]

7  Plaintiff identifies no evidence in the record before the ALJ that tends to undermine these
8  opinions.  The evidence submitted to the Appeals Council – the death certificate and the autopsy
9  report – show only that Mr. Harris died of emphysema.  They do not opine that Mr. Harris had
10 any functional limitations during the period he was apparently living with emphysema.  The
11 evidence submitted to this court – the VA letter – only supports the ALJ's finding that
12 Mr. Harris's sleep apnea was "not severe" and caused no functional limitations, as discussed
13 above.

14 The ALJ's finding was therefore supported by substantial evidence in the record, even if
15 the VA letter is included.

16 C.  Legal Error

17 Plaintiff implicitly argues that the Appeals Council erred by not remanding the matter
18 back to the ALJ for consideration of the death certificate and the autopsy report.  For the reasons
19 set forth above, this was no error.  The death certificate and the autopsy contain no evidence that
20 Mr. Harris had any functional limitations arising from, or in any way related to, his sleep apnea.
21 These documents establish, at most, that Mr. Harris had emphysema, and that he died from
22 emphysema.  However, those facts contribute nothing to plaintiff's claim that Mr. Harris was
23 disabled by emphysema (or sleep apnea or any other pulmonary disease), during his lifetime.
24 ////

---

[13] According to the Commissioner, this is a "continuous positive airway pressure" machine. ECF No. 19 at 8.
[14] "Not all individuals with sleep apnea develop a functional impairment that affects work activity." 20 C.F.R. Pt. 404, Sept. P, App. 1 ("Listing of Impairments") ¶ 3.00(H).

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to remand (ECF No. 18) is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 19) is GRANTED; and

3. The Clerk of the Court shall enter judgment for defendant, and close this case.

DATED: September 22, 2016

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE